

MICHAEL P. LOWRY
Nevada Bar No. 10666
CHRISTOPHER D. PHIPPS
Nevada Bar No. 3788
300 South 4th Street, 11th Floor
Las Vegas, NV 89101-6014
Tel: 702.727.1400/Fax: 702.727.1401
Michael.Lowry@wilsonelser.com
Christopher.Phipps@wilsonelser.com
Attorneys for Aloha Airport Express, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SANDRA DE BLANC,<br><br>               Plaintiff,<br><br>    v.<br><br>ALOHA AIRPORT EXPRESS, a Foreign Limited Liability Company; does 1 THROUGH 20; ROE BUSINESS ENTITIES 1 through 20, inclusive jointly and severally,<br><br>               Defendants. | Case No.: 2:18-cv-151<br><br>**Aloha Airport Express, LLC's Motion for Summary Judgment** |

Ms. DeBlanc fell while attempting to de-board a shuttle van and blames the driver for her fall. She sued the shuttle van company, but not the driver. Ms. DeBlanc's statute of limitations against the driver expired, extinguishing any direct liability the driver may have had. If the driver's direct liability was extinguished, then so too was his employer's derivative liability for damages the driver may have caused if he acted negligently.

DATED this 21st day of December, 2018.



BY:    /s/ Michael P. Lowry
                    MICHAEL P. LOWRY
                    CHRISTOPHER D. PHIPPS
                    300 South 4th Street, 11th Floor
                    Las Vegas, NV 89101-6014
                    Tel: 702.727.1400/Fax: 702.727.1401
                    Attorneys for Aloha Airport Express, LLC

1

**Memorandum of Points & Authorities**

2

**I.     Plaintiff fell while attempting to exit a shuttle van.**

3      Aloha Airport Express ("Aloha") uses 15 passenger vans to operate an airport shuttle

4   service between Lake Havasu City, Arizona, and McCarran International Airport in Las Vegas,

5   with stops in Laughlin.  On August 9, 2016, Plaintiff boarded an Aloha shuttle in Laughlin to

6   travel to McCarran.  The Aloha employee driving the shuttle was Daniel Leivas.  It is undisputed

7   that Mr. Leivas was within the course and scope of his employment with Aloha, but Plaintiff never

8   amended her complaint to add him as a defendant.

9      The trip from Laughlin to McCarran was uneventful.  Once the shuttle was parked at the

10   airport, Mr. Leivas placed a step stool next to the van to assist passengers in stepping down to the

11   pavement.  Plaintiff fell as she used the step stool to exit the van.  There are competing theories as

12   to why she fell using the step stool.

13      The complaint was filed October 20, 2017, and alleged two causes of action.  The first is a

14   generic negligence theory.  "Plaintiff fell off the Defendant's shuttle's ladder which collapsed as

15   she was trying to use it (hereinafter referred to as the 'dangerous condition')."[1]  Plaintiff then

16   alleged the ladder's condition "was caused as a direct result of the Defendants' failure to maintain

17   the ladder/shuttle in a reasonable and safe manner."[2]  The second cause of action alleged Aloha

18   had a duty "to exercise due care in hiring, training, supervision, retaining, and firing its employees

19   on the premises and in ensuring its employees likewise exercise due care and maintain the shuttle

20   in a reasonably safe and non-dangerous condition."[3]

21      Plaintiff timely disclosed Lane Swainston as an expert witness to testify concerning

22   liability.  He concluded the step stool's "locking mechanism is not reliable and is subject to

23   operator error or failure of the mechanism to latch shut."[4]  He then concluded it "is not stable

24   under loading that is not deliberately centered on the platform.  If the platform is not properly

25

---

26   [1] ECF No. 1 at 9, ¶ 9.
    [2] *Id*. at ¶ 10.
27   [3] *Id*. at 4, ¶ 21.
    [4] ECF No. 25-1 at 2.

28                                     Page 2 of 14

placed by the driver, it is especially unsafe when used to exit a vehicle."[5]  He ultimately concluded Plaintiff's fall was caused "by the use and placement of this 'step stool working platform.'"[6]

## II.    The driver's liability was extinguished.

Plaintiff's liability theory is that Mr. Levias was negligent by 1) deciding to use the step stool to help his passengers de-board, and 2) placing the stool where he did.  If so, then Aloha would be vicariously liable for the damages he caused within the course and scope of his employment.  However, Plaintiff never sued Mr. Leivas.  Her statute of limitations against him expired, extinguishing any direct liability Mr. Leivas may have had.  If his direct liability was extinguished, then so was Aloha's derivative liability for damages Mr. Leivas may have caused if he acted negligently.

Mr. Leivas' identity was disclosed in Aloha's first Rule 26(a)(1) disclosure served March 14, 2018.  He was listed as a witness.[7]  His handwritten incident report was disclosed,[8] along with the company's manifest listing him as the driver.[9]  Plaintiff deposed him on November 5, 2018.[10]

By March 14, 2018, Plaintiff knew Mr. Leivas' identity, role in this matter, and had documentation of that information, some of it in Mr. Leivas' own handwriting.  Plaintiff used that information to then request and eventually depose Mr. Leivas.  The deadline to add parties and amend pleadings was initially April 26, 2018,[11] and the parties later extended it to June 25, 2018.[12]  But Plaintiff never moved to join Mr. Leivas and the statute of limitations against him expired on August 9, 2018.  If Mr. Leivas had any liability to Plaintiff, it was extinguished.

The concept of vicarious liability for an employee's negligence is well established in Nevada.  When a person is negligent, causes injury and "is employed by another person or corporation responsible for the conduct of the person causing the injury, that other person or

---

[5] *Id.*
[6] *Id.*
[7] ECF No. 25-2 at 2.
[8] *Id.* at AAE 0002.
[9] *Id.* at AAE 0003.
[10] ECF No. 25-3.
[11] ECF No. 16 at 1.
[12] ECF No. 21 at 2.

corporation so responsible is liable to the person injured for damages."[13] *Semenza v. Caughlin Crafted Homes* noted an "officer of a corporation may be individually liable for any tort which he commits, and, if the tort is committed within the scope of employment, the corporation may be *vicariously or secondarily liable* under the doctrine of respondeat superior."[14]  In this case, however, there will never be a finding against Ms. Leivas because his direct liability was extinguished via the statute of limitations.  If the employee has no direct liability, then there is nothing to transfer to the employer via vicarious liability.

### a.  NRS 17.245 and *Van Cleave* do not apply in this context.

Aloha anticipates Plaintiff may rely in part upon *Van Cleave v. Gamboni Constr. Co.*, which arose from a motor vehicle accident where the injured plaintiff reached a settlement agreement with the employee-driver, but not the employer.[15]  The district court dismissed the employer, applying the common law rule that "the release of an employee automatically releases the vicariously liable employer...."[16]  The Supreme Court reversed and found that NRS 17.245 partially abrogated the common law.  NRS 17.245 specifically addressed "a release or a covenant not to sue or not to enforce judgment," and a release has no impact upon those who were not a party to it.  As the employer was not a party to the release, NRS 17.245 did not extinguish its liability.

To the extent NRS 17.245 partially abrogated prior Nevada common law, it is construed narrowly.  "This court will not read a statute to abrogate the common law without clear legislative instruction to do so."[17]  The plain language of NRS 17.245 applies only "[w]hen a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death...."  Applied here, Plaintiff did not settle with Mr. Leivas; Mr. Leivas was never sued.  As there is no release, covenant not to

---

[13] NRS 41.130.
[14] 111 Nev. 1089, 1098, 901 P.2d 684, 689 (1995) (emphasis added).
[15] 101 Nev. 524, 525, 706 P.2d 845, 846 (1985).
[16] *Id.*
[17] *First Fin. Bank, N.A. v. Lane*, 130 Nev. Adv. Op. 96, 339 P.3d 1289, 1293 (2014) (citation omitted).

1  sue, or covenant not to enforce judgment with Mr. Leivas, NRS 17.245 and *Van Cleave* do not

2  apply.

### b. At common law, an employer's derivative liability is no greater than an employee's direct liability.

5  Lacking Nevada case law directly on point, other than *Van Cleave*'s brief reference to

6  common law, Aloha has located other jurisdictions who conclude that if the employee's liability is

7  terminated, so too is the employer's derivative liability.

8  In *Greco v. University of Delaware* a student sued a university physician and the

9  University itself for medical malpractice.[18]  The student conceded that her statute of limitations

10  against the physician had expired, but sought to maintain her action against the university.  The

11  court noted "all of Greco's vicarious claims against the University and the Student Health Center

12  are, based upon the theory of *respondeat superior*, attributed to them by Greco because of Dr.

13  Talbot's status as their employee."[19]

14  The court refused to allow the claims against the University to proceed.  "Generally, a

15  viable cause of action against the employee for negligence is a condition precedent to imputing

16  vicarious liability for such negligence to the employer pursuant to the theory of *respondeat*

17  *superior*."[20]  Where the employer is in the lawsuit vicariously due to the alleged negligence of an

18  employee, "the employer cannot be held liable unless the employee is shown to be liable.  Hence,

19  generally, if absence of culpability on the part of the employee to the injured person has been

20  established by litigation, the employer cannot be held liable to the injured person."[21]  Applied to

21  the facts at issue, since "Dr. Talbot (the employee) is not liable to Greco on the merits, because

22  Greco's claims are barred by the medical malpractice statute of limitations, there is no vicarious

23  liability to be imputed to Dr. Talbot's employers…."[22]

24

25  ──────────────
[18] 619 A.2d 900 (Del. 1993).
26  [19] *Id.* at 903.
[20] *Id.*
27  [21] *Id.* (quotation omitted).
[22] *Id.* at 904.

28  Page 5 of 14

1    In *Stephens v. Petrino* a patient filed a medical-malpractice action arising from a surgery

2    and, after the statute of limitations expired, amended the complaint to substitute McVay, the

3    certified registered nurse anesthetist for the surgery, as a party in place of a John Doe.[23] McVay

4    then won summary judgment because the plaintiff had notice of his name and existence well

5    before the statute of limitations expired and did not promptly move to join him.  The court also

6    then granted summary judgment to the surgeons on the issue of their vicarious liability for

7    McVay's negligence.  This was affirmed.  "It is well-settled that when an employee has been

8    released or dismissed, and the employer has been sued solely on a theory of vicarious liability, any

9    liability of the employer is likewise eliminated."[24]

10    In *Karaduman* v. *Newsday, Inc.* the four individual defendants were granted summary

11    judgment.[25]  Respondeat superior "merely provides a theoretical means for transferring the

12    *liability* of an employee to his employer and imposing upon the latter financial responsibility for

13    the legally cognizable culpable conduct of the former."[26]  "It follows that the suit against Newsday

14    cannot be maintained solely on the theory that it is vicariously liable, since there is no primary

15    liability upon which such a claim of vicarious liability might rest."[27]

16    *Comer v. Risko* alleged medical malpractice, but the allegedly negligent doctors "were not

17    named as parties to this action. The statute of limitations expired, and their liability, if any, was

18    extinguished."[28]  *Comer* refused to permit suit against the hospital directly for the doctors'

19    negligence.

20    > An agent who committed the tort is primarily liable for its actions, while the principal
21    > is merely secondarily liable. The liability for the tortious conduct flows through the
      > agent by virtue of the agency relationship to the principal. If there is no liability
22    > assigned to the agent, it logically follows that there can be no liability imposed upon
      > the principal for the agent's actions.[29]

23
      [23] 86 S.W.3d 836, 843 (Ark. 2002).
24    [24] *Id.* at 843.
      [25] *Karaduman* v. *Newsday, Inc.*, 416 N.E.2d 557, 563 (N.Y. 1980).
25    [26] *Id.* at 564.
      [27] *Id.*
26    [28] 833 N.E.2d 712, 714 (Ohio 2005).
      [29] *Id.* at 716-17; *Nat'l Union Fire Ins. Co. v. Wuerth*, 913 N.E.2d 939, 944 (Ohio 2009)
27    ("Although a party injured by an agent may sue the principal, the agent, or both, a principal is
      vicariously liable only when an agent could be held directly liable.")

28

Applied here concerning Aloha, Mr. Leivas' individual liability was extinguished by the statute of limitations.  As Aloha's liability is merely derivative of his, its vicarious liability has also been extinguished.

**III.   Summary judgment is proper for negligent hiring, training, supervision or retention.**

There are two independent reasons that summary judgment is proper on Plaintiff's second cause of action alleging negligent hiring, training, supervision or retention.

**a.   These causes of action were extinguished as a matter of law.**

Causes of action for negligent hiring, training, supervision, and entrustment are derivative claims.  Their purpose is to hold one defendant vicariously responsible for the damages negligently caused by another, in this case the goal is to hold Aloha vicariously responsible for damages Mr. Levias may have caused if he acted negligently.  However, if Mr. Levias has any remaining liability, by admitting he was within the course and scope of his employment with Aloha when the fall occurred, this goal has already been accomplished.  As a result, the negligent hiring, training, supervision, and entrustment causes of action are duplicative and should be dismissed.

Aloha is aware Judge Gordon previously considered this argument in *Terrell v. Cent. Wash. Asphalt, Inc.* and concluded "the negligent entrustment claim is not duplicative of [the employer's] vicarious liability for [the employee's] alleged negligence because the evidence of [the employer's] alleged negligent entrustment may lead the jury to award a different amount of punitive damages against the employer."[30]  The rationale for this holding relied upon the punitive damages requested in the complaint.  Plaintiff here has not sought punitive damages.

**i.   This rule is used in the majority of jurisdictions that have considered it.**

Supreme Court of Nevada has not, to the best of Aloha's knowledge, ruled on this issue, so it is appropriate to consider decisions from other jurisdictions.  At least 18 jurisdictions, including

---

[30] 168 F. Supp. 3d 1302, 1313 (D. Nev. 2016).

Arkansas,[31] California,[32] Colorado,[33] Connecticut,[34] Florida,[35] Georgia,[36] Idaho,[37] Illinois,[38] Indiana,[39] Maryland,[40] Mississippi,[41] Missouri,[42] New York,[43] North Carolina,[44] Oregon,[45]

---

[31] *Elrod v. G & R Constr. Co.*, 628 S.W.2d 17, 19 (Ark. 1982) (affirming the trial court's refusal to allow plaintiff's claims of both respondeat superior and negligent entrustment to go to the jury).
[32] *Armenta v. Churchill*, 267 P.2d 303 (Cal. 1954); *Diaz v. Carcamo*, 253 P.3d 535, 538 (Cal. 2011).
[33] *Ferrer v. Okbamicael*, 390 P.3d 836 (Colo. 2017).
[34] *Prosser v. Richman*, 50 A.2d 85 (Conn. 1946).
[35] *Clooney v. Geeting*, 352 So. 2d 1216 (Fla. App. 1977).
[36] *City of Kingsland v. Grantham*, 805 S.E.2d 116 (Ga. App. 2017); *Kelley v. Blue Line Carriers, LLC*, 685 S.E.2d 479, 483 (Ga. App. 2009); *Durben v. Am. Materials, Inc.*, 503 S.E.2d 618, 619 (Ga. App. 1998); *Bartja v. National Fire Ins. Co.*, 463 S.E.2d 358, 361 (Ga. App. 1995).
[37] *Wise v. Fiberglass Sys.*, 718 P.2d 1178, 1181 (Idaho 1986) ("[I]if the owner has already admitted liability under the doctrine of respondeat superior, it is improper to also allow a plaintiff to proceed against the owner of a vehicle on the independent negligence theories of negligent entrustment and negligent hiring or training.").
[38] *Gant v. L.U. Transp., Inc.*, 770 N.E.2d 1155, 1159 (Ill. App. 2002); *Thompson v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 854 N.E.2d 744, 747-48 (Ill. App. 2006).
[39] *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1178 (Ind. 2017).
[40] *Houlihan v. McCall*, 78 A.2d 661, 665-666 (Md. 1951).
[41] *Nehi Bottling Co. v. Jefferson*, 84 So. 2d 684, 686 (Miss. 1956) (concluding the trial court erred by admitting evidence of the driver's other accidents because the company's "answer admitted that Davis was within the scope of his employment at the time and place in question, and Davis so testified."); *followed by Pennington v. UPS Ground Freight, Inc.*, No. 3:16-cv-00248, 2018 U.S. Dist. LEXIS 23073, 2018 WL 847249 (N.D. Miss. Feb. 12, 2018).
[42] *McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995); *Coomer v. Kan. City Royals Baseball Corp.*, 437 S.W.3d 184, 205 (Mo. 2014) (affirming the trial court's ruling "that Coomer was entitled to submit one, but only one, theory on which the jury could hold the Royals liable for Sluggerrr's negligence (e.g., respondeat superior, negligent training, or negligent supervision)."
[43] *Karoon v. N.Y.C. Transit Auth.*, 659 N.Y.S.2d 27 (App. Div. 1997); *Troy v. City of N.Y.*, 2018 NY Slip Op 02293 (App. Div.).
[44] *Frugard v. Pritchard*, 434 S.E.2d 620, 624 (N.C. App. 1993) ("If the allegations of a complaint are based both on the doctrine of respondeat superior and negligent entrustment and the agency relationship is admitted, the liability of the defendant employer would rest on the doctrine of respondeat superior only and the negligent entrustment allegation would become irrelevant and prejudicial.") (*rev'd on other grounds Frugard v. Pritchard*, 450 S.E.2d 744 (N.C. 1994)).
[45] *Tuite v. Union Pac. Stages*, 284 P.2d 333, 338 (Or. 1955) (where the defendant driver was admitted in the course and scope of employment, "[t]he 'entrustment doctrine' had no application whatever to the facts and circumstances of this case, and the trial court properly took it from consideration by the jury.").

Texas,[46] Washington D.C.,[47] and Wyoming[48] have adopted the majority rule that once vicarious liability is admitted, such as here, a claim for negligent hiring, training, supervision and retention against the employer is eliminated.  Each has given similar explanations.

The reasoning is simple and consistent with the same principles in Nevada.  "This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay for the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training."[49]  It also prevents unnecessary litigation over claims that have become redundant due to a factual admission by one party and to avoid the admission of irrelevant, prejudicial material.[50]  It is "quite unnecessary to pursue the alternative theory [of negligence] in order to hold the corporate defendant" liable and allowing evidence of these claims "can serve no purpose except to inflame the jury."[51]

> If all of the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose.  The energy and time of courts and litigants is unnecessarily expended.  In addition, potentially inflammatory evidence comes into the record which is irrelevant to any contested issue in the case.[52]

Other courts agree.  Illinois concluded, once course and scope is admitted, "the cause of action for negligent entrustment is duplicative and unnecessary.  To allow both causes of action to stand would allow a jury to assess or apportion a principal's liability twice.  The fault of one party

---

[46] *Rodgers v. McFarland*, 402 S.W.2d 208, 210 (Tex. Civ. App. 1966) (affirming decision to exclude driving record from evidence.  "It would have been admissible on the issue of negligent entrustment, to establish the liability of the owner for the acts of the driver, but it became immaterial on that issue when the owner admitted liability. Public policy would not permit forcing the parties to try an issue where none existed."); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex. Civ. App. 1979) ("Once the applicability of the respondeat superior doctrine is established, the competence or incompetence of the servant and the care which was exercised in his employment are immaterial issues. The master is liable for the acts of his servant whether the servant is competent or not.").
[47] *Hackett v. Washington Metropolitan Area Transit Authority*, 736 F.Supp. 8, 9 (D.D.C. 1990).
[48] *Bogdanski v. Budzik*, 408 P.3d 1156, 1164 (Wyo. 2018) (concluding the trial court "correctly held that Bogdanski could not pursue claims of both vicarious liability and direct liability for negligent training when FedEx admitted its liability for Budzik's negligence.").
[49] *Estate of Lee*, 308 F.Supp.2d at 312
[50] *McHaffie*, 891 S.W.2d at 826.
[51] *Houlihan*, 78 A.2d at 665-666.
[52] *Id.*

cannot be assessed twice…."[53]  In Georgia, "[t]he rationale for this is that, since the employer would be liable for the employee's negligence under respondeat superior, allowing claims for negligent entrustment, hiring, and retention would not entitle the plaintiff to a greater recovery, but would merely serve to prejudice the employer."[54]  Indiana ruled similarly in 2017.

> To allow both claims would serve only to prejudice the employer, confuse the jury, and waste judicial resources when ultimately the result—that the employer is liable—is the same and the employer has stipulated as much. Such an admission exposes an employer to liability for any and all fault assessed to the employee's negligence, and thus a negligent hiring claim becomes duplicative since a plaintiff may not recover twice for the same damage.[55]

Federal courts have predicted the state courts in Louisiana,[56] Montana,[57] New Jersey,[58] and Pennsylvania[59] would join the majority.  At least five judges in this district have also predicted Nevada would adopt the majority rule.  Judge Reed discussed it in *Grimes v. Combined Transp., Inc.* and concluded "the Nevada Supreme Court would adopt the majority rule."[60]  He reasoned the majority's biggest concern "is the prejudice to the employee of admitting character evidence which, while potentially quite relevant to the employer's alleged negligence in hiring, training,

---

[53] *Gant*, 770 N.E.2d at 1160.

[54] *Kelley*, 685 S.E.2d at 482-83.

[55] *Sedam*, 84 N.E.3d at 1178.

[56] *Dennis v. Collins*, No. 15-2410, 2016 U.S. Dist. LEXIS 155724 (W.D. La. Nov. 9, 2016); *Wright v. Nat'l Interstate Ins. Co.*, No. 16-16214, 2017 U.S. Dist. LEXIS 184182, 2017 WL 5157537 (E.D. La. Nov. 6, 2017).

[57] *Parrick v. FedEx Grounds Package Sys.*, No. CV 09-95, 2010 U.S. Dist. LEXIS 47729, 2010 WL 1981451 (D. Mont. Apr. 21, 2010) ("Because the logic underlying the majority rule is persuasive, this Court has previously concluded the Montana Supreme Court would follow that approach and hold that where, as here, an employer has admitted respondeat superior liability for an employee's allegedly wrongful conduct, evidence of negligent hiring and retention generally becomes both unnecessary and prejudicial."); *Mann v. Redman Van & Storage Co.*, No. CV 10-128, 2011 U.S. Dist. LEXIS 132513, 2011 WL 5553044 (D. Mont. Oct. 17, 2011).

[58] *Sun Min Lee*, 308 F. Supp. 2d at 315; (Predicting "that, like New York and the majority of jurisdictions that have considered this issue, New Jersey would not permit Plaintiff to proceed on her claim of negligent hiring, training, supervision, and retention in light of Defendants' admission that Jackson was acting within the course and scope of his employment at the time of the accident."); *Fallon v. Marxen & A.P.A. Transp., Inc.*, Civil Action No. 95-1546, 1997 U.S. Dist. LEXIS 24793 (D.N.J. July 25, 1997) ("This Court concludes that, if faced with such a situation, the courts of the State of New Jersey would also adopt this rule.").

[59] *Vargo v. Coslet*, No. 3:CV-02-676, 2002 U.S. Dist. LEXIS 29005 (M.D. Pa. Dec. 20, 2002) ("To permit a case to proceed on respondeat superior and negligent entrustment would allow the evaluation of evidence which would be highly prejudicial and inadmissible in a cause of action based on the imputed negligence of the driver alone.").

[60] No. 3:05-CV-00461, 2007 U.S. Dist. LEXIS 103141 (D. Nev. Oct. 3, 2007).

supervision, or entrustment, would normally be inadmissible to show the employee's negligence." A second "concern is the waste of judicial resources that arises from proving liability that is effectively conceded."

Judge Reed acknowledged "Nevada clearly treats an employer's direct liability for negligent hiring, training, supervision, and retention as separate and distinct from the employer's vicarious liability for an employee's negligence." But this did not indicate Nevada law conflicted with the majority rule because "courts that have embraced the majority rule have not viewed this as the dispositive issue; they have not based their decisions on the distinct or non-distinct nature of an employer's liability." He concluded Nevada would apply the majority rule because "the prejudice that results from allowing a direct cause of action under these circumstances is undue because (1) the plaintiff cannot recover more than the respondeat superior theory would allow, and (2) the employee's negligence is the key issue for the finder of fact under either theory."

In *Cruz v. Durbin* Judge Jones addressed a motion to dismiss a negligent hiring and training claim. He noted "[m]ost of the courts to address the question have noted that the bar to a negligent hiring or training action after an employer admits the employee was acting within the scope of employment … is the majority rule."[61] He then adopted and applied the rule. However, given the early stage of the case, he granted the plaintiff leave to amend to assert punitive damages. Judge Navarro also concluded "Nevada would adopt the majority rule in situations like the present one, where the direct claims of negligence against the employer rest entirely upon the alleged negligence of the employee and are therefore superfluous with the claim for respondeat superior liability."[62]

Judge George adopted and applied the majority rule in *Adele v. Dunn*.[63] "The court predicts that Nevada would adopt the majority rule such that, in situations in which a motor carrier admits vicarious liability for the conduct of a driver, direct claims of negligent entrustment or

---

[61] 2:11-cv-00342, 2011 U.S. Dist. LEXIS 51057, 2011 WL 1792765 (D. Nev. May 9, 2011).
[62] *Alvares v. McMullin*, No. 2:13-cv-02256, 2015 U.S. Dist. LEXIS 73188, 2015 WL 3558673 (D. Nev. June 3, 2015).
[63] 2:12-cv-00597, 2013 U.S. Dist. LEXIS 44602, 2013 WL 1314944 (D. Nev. Mar. 27, 2013).

negligent training and supervision against a motor carrier would be disallowed where those claims are rendered superfluous by the admission of vicarious liability." In *Gonzalez v. Kirk* Judge Mahan stated "the majority of jurisdictions have held that if vicarious liability is admitted, and punitive damages are not asserted, as in this case, then claims of negligent supervision and negligent entrustment are legally void."[64]  This logic was consistent with Rule 1.  "This has the effect of streamlining litigation and preventing unnecessary factual disputes, as vicarious liability allows plaintiffs to recover from an employer even without a showing of negligence."

Judge Hicks has also concluded Nevada would join the majority.  Where course and scope is admitted, "Plaintiffs may not maintain a direct cause of action for negligent hiring and supervision where it would impose no additional liability on Defendants because Watkins & Shepard has already admitted vicarious liability."[65]  These claims would "merely be an alternative theory on which to recover against Watkins & Shepard for Britt's alleged negligence, and thus entirely superfluous."[66]  Although the rule was adopted, the motion to dismiss was denied because discovery had not yet occurred and punitive damages were pled.

The principles of eliminating duplicative claims, double recoveries, and avoiding evidence whose probative value is irrelevant to the matters at hand and would be unfairly prejudicial evidence are all consistent with Nevada's own same principles.

**b.  Plaintiff lacks evidence to prove these claims.**

Summary judgment is proper even if the causes of action are not moot as a matter of law. "The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position."[67] "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."[68]  Negligent hiring and

---

[64] 2014 U.S. Dist. LEXIS 66928, 4-5 (D. Nev. May 14, 2014).
[65] *Wright v. Watkins & Shepard Trucking, Inc.*, 968 F. Supp. 2d 1092, 1097 (D. Nev. 2013).
[66] *Id.*
[67] *Burnett v. C.B.A. Sec. Serv.*, 107 Nev. 787, 789, 820 P.2d 750, 752 (1991).
[68] *Hall v. SSF, Inc.*, 112 Nev. 1384, 1392, 930 P.2d 94, 98 (1996).

1  supervision claims require a plaintiff to establish the employer knew or should have known that

2  the employee was unfit for the position he held.[69]

3       Plaintiff simply lacks facts to support these causes of action.  In opposing this motion, she

4  must present admissible evidence showing that Aloha knowingly hired Mr. Levias despite his

5  "dangerous propensities," or despite the fact he was "unfit" for the job.  Plaintiff has gathered no

6  evidence indicating such facts are present, let alone that they are what caused her fall.  There is no

7  admissible evidence in support of these causes of action, so summary judgment is warranted.

8  **IV.    No genuine issues of material fact remain for trial.**

9       Plaintiff's case depends entirely upon Mr. Levias.  She alleges he was negligent and

10  caused her injuries, but she failed to sue him.  She alleges he was negligently hired or trained, but

11  does not identify "dangerous propensities" he had that disqualified him from the position he held.

12  Plaintiff's causes of action all fail, leaving nothing for trial.  Summary judgment is proper.

13       DATED this 21st day of December, 2018.

14  

15

16                                   /s/ Michael P. Lowry

        BY:  _____
17           MICHAEL P. LOWRY
             CHRISTOPHER D. PHIPPS
18           300 South 4th Street, 11th Floor
             Las Vegas, NV 89101-6014
19           Tel: 702.727.1400/Fax: 702.727.1401
             Attorneys for Aloha Airport Express, LLC
20

21

22

23

24

25

26

27  _____
    [69] *Mitchell v. Dist. Ct.*, 131 Nev. Adv. Op. 21, 348 P.3d 675, 682 (2015).
28                                   Page 13 of 14

1

**CERTIFICATE OF SERVICE**

2      Pursuant to FRCP 5, I certify that I am an employee of Wilson Elser Moskowitz Edelman &

3   Dicker LLP, and that on December 21, 2018, I served **Aloha Airport Express, LLC's Motion**

4   **for Summary Judgment** as follows:

5      ☐   by placing same to be deposited for mailing in the United States Mail, in a sealed
6          envelope upon which first class postage was prepaid in Las Vegas, Nevada;

7      ☒   via electronic means by operation of the Court's electronic filing system, upon each
          party in this case who is registered as an electronic case filing user with the Clerk;
8

9   | Ian Estrada | |
10  | Richard Harris Law Firm | |
    | 801 S. 4th St. | |
    | Las Vegas, NV 89101 | |
11  | Attorneys for Sandra DeBlanc | |

12

13                          BY:   /s/ Amanda Ochs
                                  An Employee of
14                                

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          Page 14 of 14

Case No.: 2:18-cv-0151

**Sandra De Blanc v. Aloha Airport Express**

**Aloha Airport Express, LLC's Motion for Summary Judgment**


**Exhibit A**

# Expert Lane Swainston Report



**SWAINSTON**
**CONSULTING GROUP**

1541 Little Dove Court, Henderson, NV 89014
Telephone: (702) 434-9576 • Fax: (702) 435-1888
Web: www.swainston.com
License #0048156

23 July 2018

Ian Estrada, Esq.
Richard Harris Law Firm
801 S 4th St
Las Vegas, NV 89101

Subject:     De Blanc v Aloha Airport Express

Mr. Estrada:

This report was prepared after Swainston Consulting Group (SCG) visited opposing counsel's office located at 11th Floor, 300 S 4th St, Las Vegas, NV 89101 on 20 July 2018 to conduct an inspection of the "HaulMaster step stool working platform" that collapsed and caused Ms. Sandra De Blanc (Plaintiff) to fall while exiting the shuttle van operated by Aloha Airport Express LLC (Aloha). We reserve the right to supplement our findings and conclusions, as necessary or as additional information becomes available. The following documents were reviewed in the preparation of this report:

- Complaint dated ;
- SCG Site Visit Photographs dated 20 July 2018 ;
- Deposition Transcript of Sandra De Blanc dated 6 June 2018;
- Incident Report dated 9 August and 10 August 2016;
- Plaintiff's Sandra De Blanc's Responses to Defendant's Interrogatories dated 12 March 2018;
- Stool Photos AAE 0006-AAE 0009.

The incident report in the record was filled out by the driver for Aloha. He describes a failure of the working platform that is similar to what SCG personnel were able to replicate with the platform we examined at the office of Defense counsel and with an exemplar platform that we obtained from Harbor Freight Tools. The description is also consistent with the testimony of the Plaintiff in her

Ian Estrada, Esq.                                      De Blanc v Aloha Airport Express
23 July 2018
Page 2 of 3

deposition. The locking mechanism is not reliable and is subject to operator error or failure of the mechanism to latch shut. These problems were all observed on the working platform that was examined by us at the office of the Defense counsel.

The platform itself is not stable under loading that is not deliberately centered on the platform. If the platform is not properly placed by the driver, it is especially unsafe when used to exit a vehicle. It is easy to understand how this platform would collapse when used in the manner described. When a person steps from a van they are not only stepping down, they are also stepping out. That rotational force was beyond what the stool could bear without failing.

We were not able to find an example of a 2008 Chevrolet Express 3500 passenger van specification that requires an operator-provided step for unloading. No transportation standard known to us makes this type of requirement. The working platform was not intended for that use. The record does not indicate that the suspension on the van was modified or raised in any way. The use of the step was a hindrance and created a hazard for the Plaintiff. The cause of the accident that is the subject of this case is the use and placement of this "step stool working platform". The collapse of the platform as described is a predictable outcome given the set of facts in this case.

This report, including any opinions contained herein, is based on our investigation of the information provided. Accordingly, this report represents our preliminary opinions in this matter. Should new details or information be provided, we reserve the right to supplement our opinions as we may see fit.

Ian Estrada, Esq.
23 July 2018
Page 3 of 3

De Blanc v Aloha Airport Express

Thank you for this opportunity to be of assistance.  Please call us if you have any questions, regarding this report or our opinions.

Sincerely,

**SWAINSTON CONSULTING GROUP**

Lane Swainston CBO, CXLT
Principal Consultant

   

Enclosure:  Inspection photographs and video taken by SCG.



## ACCIDENT/INCIDENT REPORT

Date of Incident: 8/9/2016          Time:    4:45      PM

Name of Person:      Sandra Deblanc

Address:     N/A Reservation Number #60410

Phone Number(s):     928-758-7704

Date of birth:     N/A          Male:          Female: X

**INJURY**

Who was injured person?      Passenger      Driver      Office staff

I was informed by our driver Daniel when he arrived at the airport that one of our passenger Sandra Deblanc fell getting off the shuttle. Just around 4:45p Sandra called the office to inform me that she had fell and wanted to let me know before she boarded her plane. I told her the driver had called to inform me. She said "okay, just wanted to let you know"

Signature   *Anthony B. Sanwar*   Date:   8/9/2016

Aloha Airport Express    116 Lake Havasu Ave. S Suite #202   Lake Havasu, AZ 86403
928-854-5253

**AAE 0001**



| PAX Info (if applicable) | |
|---|---|
| Date of Travel: | _____ |
| Reservation #: | _____ |
| Vehicle #: | _____ Trailer:_____ |

# INCIDENT REPORT

**Please describe in detail the incident that occurred:**

Sandra Deblanc seemed difficult to read at first but opened up a little during conversation. She was more reserved and her personality came across as a little moody as she mentioned the other shuttle driver (Jeanette) let her listen to music & interrupting my conversation with another different passenger.

Sandra sat in the middle of Bench 1 front row bench. Sandra did rush her exit as I dropped her off at the Delta gate/door entrance of Terminal 1.

Sandra overstepped her exit stepping on the front edge of the foot stool kicking the stool underneath the van. Sandra was not watching her foot placement as I locked on to her eyes as I was helping her out of the van. I caught her as she shifted forward landing on her right foot/leg and as she landed she immediately rested on her right knee. The other

Employee Name: Daniel Leives          Date: 8/9/16

Signature:

Aloha Airport Express LLC.
116 S. Lake Havasu Avenue, Suite 202, Lake Havasu City, AZ 86403
(928)854-5253   FAX (928)302-1827

AAE 0002

Aloha Airport Express
Manifest

| DIRECTION: Departures | Run #2002 | 08/09/16 10:00 AM |
|---|---|---|

DRIVER: **Daniel Leivas**                                    STOPS:  2
VEHICLE: **Van 1414 - 13pax**                          PAX:      3

---

60370   spencer LYONS               (858) 243-4602
Pickup: 10:00 AM 271 S. Lake Havasu Ave. QUALITY INN & SUITES, Lake Havasu City
Dropoff: Las Vegas (McCarran) International Airport
Flight:   04:15 PM ---
PAX: 1  Bags:1
$60.00 Collected credit card Credit card
Confirmed.
Trip Complete.

---

60410   sandra DEBLANC             (928) 758-7704
Pickup: 12:00 PM 1650 S. Casino Dr. RIVERSIDE RESORT, Laughlin
Dropoff: Las Vegas (McCarran) International Airport
Flight:   07:30 PM Delta Airlines
PAX: 1  Bags:2
$50.00 Collected credit card Credit card
Confirmed.
Trip Complete.

---

60435   julie WEATHERSPOON          (503) 223-6587
Pickup: 12:00 PM 1650 S. Casino Dr. RIVERSIDE RESORT, Laughlin
Dropoff: Las Vegas (McCarran) International Airport
Flight:   07:00 PM Alaska Airlines
PAX: 1  Bags:2
$50.00 Collected credit card Credit card
No courtesy call, phone is out of service.
Trip Complete.

---

Total Fare: **$160.00**

**AAE 0003**

# Case No.: 2:18-cv-0151

## Sandra De Blanc v. Aloha Airport Express

## Aloha Airport Express, LLC's Motion for Summary Judgment

## Exhibit B

# Defendant Aloha Airport Express, LLC's Initial Disclosure of Witnesses and Documents pursuant to FRCP 26(a)(1)

1   Michael Lowry
    Nevada Bar No. 10666
2   Christopher D. Phipps
    Nevada Bar No. 3788
3   WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
4   300 South Fourth Street, 11th Floor
    Las Vegas, Nevada  89101
5   (702) 727-1400; FAX (702) 727-1401
    Michael.Lowry@wilsonelser.com
6   Christopher.Phipps@wilsonelser.com
7   *Attorneys for Defendant Aloha Airport Express, LLC*

8                    **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10  SANDRA DE BLANC,                         | CASE NO.: 2:18-cv-00151-APG-CWH

11                  Plaintiff,
                                             | **DEFENDANT ALOHA AIRPORT**
12       v.                                  | **EXPRESS, LLC'S INITIAL**
                                             | **DISCLOSURE OF WITNESSES AND**
13  ALOHA AIRPORT EXPRESS, a Foreign Limited | **DOCUMENTS PURSUANT TO FRCP**
    Liability Company; does 1 THROUGH 20; ROE| **26(a)(1)**
14  BUSINESS ENTITIES 1 through 20, inclusive
    jointly and severally,
15                  Defendants.

16

17       Defendant ALOHA AIRPORT EXPRESS, LLC, by and through its counsel of record,

18  WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby submits the following list

19  of witnesses and identification of documents, pursuant to FRCP 26(a)(1) as follows:

20                                    **I.**

21                               **WITNESSES**

22       Defendant identifies the following individuals pursuant to Fed. R. Civ. P 26(a)(1).   The

23  individuals identified are believed to have knowledge of facts and circumstances related to the

24  allegations set forth in the pleadings on file in this action:

25  . . .

26  . . .

27

28

1274133v.1

1.   Sandra De Blanc
     c/o Michaela E. Tramel, Esq.
     RICHARD HARRIS LAW FIRM
     801 South Fourth Street
     Las Vegas, Nevada 89101
     702-444-4444

Plaintiff is expected to testify regarding her personal knowledge of the facts and circumstances surrounding the incident that is the subject of the plaintiff's Complaint, and regarding the plaintiff's alleged causes of action.

2.   Daniel Leivas, III
     c/o Christopher D. Phipps, Esq.
     WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
     300 South Fourth Street, 11th Floor
     Las Vegas, Nevada 89101
     702-727-1400

This witness is believed to have witnessed the incident and is expected to testify regarding her personal knowledge of the facts and circumstances surrounding the incident that is the subject of the plaintiff's Complaint.

3.   Corporate Representative and/or
     Person(s) Most Knowledgeable for
     ALOHA AIRPORT EXPRESS, LLC
     c/o Christopher D. Phipps, Esq.
     WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
     300 South Fourth Street, 11th Floor
     Las Vegas, Nevada 89101
     702-727-1400

This Defendant is expected to testify regarding their knowledge of the facts and circumstances surrounding the event which is the subject of the plaintiff's Complaint.

Defendant reserves the right to call as a witness any and all medical providers who evaluated and/or treated Plaintiff for injuries allegedly sustained in the event which is the subject of the plaintiff's Complaint.

Defendant reserves the right to call any witness(es) identified by any party to this action. Defendant further reserves the right to amend and/or supplement this foregoing list of witness(es) as discovery warrants.

Page 2 of 6

1274133v.1

Without waiving any objections as to the admissibility of the testimony of such witnesses, Defendant identifies and incorporates into its list of witnesses any and all witnesses identified by Plaintiff and/or all other parties to this action. Defendant further identifies and incorporates into its list of witnesses any and all witnesses needed for rebuttal and/or impeachment.

Without waiving any objections as to the admissibility of the testimony of such witnesses, Defendant identifies and incorporates into its list of witnesses each and every witness whose identity is discovered through the course of discovery in this case.

Without waiving any objections as to the admissibility of the testimony of such witnesses, Defendant identifies and incorporates into its list of witnesses any and all experts who have not yet been retained to testify, and will supplement this list of witnesses accordingly.

Defendant reserves the right to supplement its list of witnesses with any additional persons who become known as discovery continues.

## II.

## DOCUMENTS

Defendant submits this description by category and location of all requisite documents, electronically stored information, and tangible things that the Defendant has in his possession, custody, or control and may use to support his claims or defenses, unless the use would be solely for impeachment.

| No. | Document | Bates Number |
|-----|----------|--------------|
| A. | Complaint | n/a |
| B. | Answer | n/a |
| C. | Accident/Incident Report | AAE 0001 |
| D. | Employee witness statement by Daniel Leivas | AAE 0002 |
| E. | Trip #2002 passenger manifest | AAE 0003 |
| F. | Business Auto Insurance Declarations | AAE 0004 – AAE 0005 |
| G. | Photographs of subject step stool | AAE 0006 – AAE 0009 |

1274133v.1

1       Defendant reserves the right to use any document produced by any other party to this

2   lawsuit.  Though asserting this reservation, Defendant is not stipulating to the admissibility of such

3   records and is not waiving any objections that may exist regarding the admissibility of such records

4   at the time of a hearing, arbitration, mediation or trial in this matter.  Further, Defendant reserves

5   the right to perform a review of any such document identified by any other party to this lawsuit and

6   have the evidence regarding said investigation introduced at trial.

7       Defendant reserves the right to supplement its list of documents and tangible things with

8   additional materials, if any, as they become known and available.

9   **OTHER DOCUMENTS**

10      All documents and evidence identified by Plaintiffs or by any other party to this action, or

11  obtained during the course of discovery.

12  **Reservation of Right to Use Documents from Other Parties or Additional Exhibits:**

13      Defendants may introduce any evidence or discovery exchanged by any party in this matter.

14  Defendants hereby reserve the right to supplement this List of Witnesses and Identification of

15  Documents should, during the course of discovery, additional documentation or witnesses become

16  known.

17  **III.**

18  **COMPUTATION OF EACH CATEGORY OF DAMAGES**

19      Defendant has no existing computation of any category of damages.

20  **IV.**

21  **INSURANCE AGREEMENT**

22      The applicable Insurance Declarations has been produced herewith.  The full insurance

23  policy will be made available on request.

24  . . .

25  . . .

26

27

28  Page 4 of 6

1274133v.1

1    Defendant reserves the right to amend and/or supplement the foregoing list of documents

2  and tangible things as discovery progresses, and specifically reserves the right to object to the

3  authenticity of any documents submitted by the Plaintiff.

4
        DATED this _14TH_ day of March, 2018.

5

6                                    **WILSON, ELSER, MOSKOWITZ, EDELMAN**
                                     **& DICKER LLP**
7

8                                    By: _____
                                         Michael Lowry
9                                        Nevada Bar No. 10666
                                         Christopher D. Phipps
10                                       Nevada Bar No. 3788
                                         300 South Fourth Street, 11th Floor
11                                       Las Vegas, Nevada  89101
                                         *Attorneys for Defendant*
12                                       *ALOHA AIRPORT EXPRESS, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                     Page 5 of 6

1274133v.1

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of Wilson Elser Moskowitz Edelman & Dicker LLP, and that on this _14th_ day of March, 2018, I served a true and correct copy of the foregoing **DEFENDANT ALOHA AIRPORT EXPRESS, LLC'S INITIAL DISCLOSURE OF WITNESSES AND DOCUMENTS PURSUANT TO FRCP 26(a)(1)** as follows:

☒  by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada; and/or

☐  via electronic means by operation of the Court's electronic filing system, upon each party in this case who is registered as an electronic case filing user with the Clerk; and/or

☐  via hand-delivery to the addressees listed below; and/or

☐  by transmitting via email the document listed above to the email address set forth below on this date before 5:00 p.m. (PST/PDT).

Michaela E. Tramel, Esq.
RICHARD HARRIS LAW FIRM
801 S. 4th Street
Las Vegas, Nevada 89101
*Attorneys for Plaintiff*

BY _____
An Employee of
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

Page 6 of 6

1274133v.1

Case No.: 2:18-cv-0151

Sandra De Blanc v. Aloha Airport Express

Aloha Airport Express, LLC's Motion for Summary Judgment

Exhibit C

# Daniel Leivas Deposition Cover Page

Daniel Leivas ~ November 5, 2018

Page 1

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3

4     SANDRA DE BLANC,                    )
                                          )
5                    Plaintiff,           ) Case No.
                                          ) 2:18-CV-00151-APG-CWH
6          vs.                            )
                                          )
7     ALOHA AIRPORT EXPRESS, a Foreign)
      Limited Liability Company;         )
8     DOES 1 through 20; ROE BUSINESS )
      ENTITIES 1 through 20, inclusive)
9     jointly and severally,             )
                                          )
10                   Defendants.          )
      _____)

11

12                     CONDENSED

13                     TRANSCRIPT

14

15               DEPOSITION OF DANIEL LEIVAS

16           Taken on Monday, November 5, 2018

17                  At 1:25 p.m. (MST)

18             At 3505 Maricopa Avenue

19            Lake Havasu City, Arizona

20

21

22

23

24    Reported by:  Sharon E. Bradley | Registered Merit
           Reporter | Certified Realtime Reporter | Arizona
           Certified Reporter No. 50040 | California CSR No.
25         4003 | Nevada CR No. 101 | Utah CCR No. 8015306431

All-American Court Reporters (702) 240-4393
www.aacrlv.com