# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SANDRA DE BLANC, | Case No.: 2:18-cv-00151-APG-DJA |
| Plaintiff | **Order Denying Defendant's Motion for Summary Judgment and Granting Defendant's Motion in Limine** |
| v. | |
| ALOHA AIRPORT EXPRESS, LLC, | [ECF Nos. 25, 27] |
| Defendant | |

Plaintiff Sandra De Blanc sues defendant Aloha Airport Express, LLC for injuries she sustained while stepping out of Aloha's van. De Blanc brings claims for negligence and negligent hiring, training, and supervision, but did not sue the driver of the van. Aloha moves for summary judgment, arguing that (1) the expiration of the statute of limitation against the driver extinguishes Aloha's vicarious liability and (2) De Blanc's negligent hiring, training, and supervision claim is duplicative of her vicarious liability claim. I predict that the Supreme Court of Nevada would (1) not hold that the expiration of the statute of limitations against the driver discharges Aloha's liability and (2) allow both vicarious liability and negligent hiring, training, and supervision claims. I therefore deny Aloha's motion for summary judgment.

Aloha also moves to exclude De Blanc's expert, Lane Swainston. I grant Aloha's motion to exclude him because Swainston's opinions do not assist the jury and are not the product of reliable principles and methods.

## I.    BACKGROUND

On August 9, 2016, De Blanc was a passenger on an Aloha shuttle driven by Aloha employee Daniel Leivas. ECF No. 25 at 21. Upon arrival at McCarran Airport in Las Vegas,

1 Leivas placed a step stool next to the van. *Id.* at 19-20. De Blanc fell as she used the step stool to

2 disembark the van, but she was able to board her flight that day. *Id.*

3       De Blanc filed this suit on October 20, 2017, and Aloha removed it to federal court on

4 January 26, 2018. ECF No. 1. Aloha disclosed Leivas as a fact witness and produced his

5 handwritten incident report on March 14, 2018. ECF No. 25 at 23-28. By agreement of the

6 parties, the final deadline to add parties and amend pleadings was June 25, 2018. ECF No. 21 at

7 2. De Blanc did not move to join Leivas before the limitation period expired on August 9, 2018.

8       De Blanc offers Swainston's expert opinion in support of her claims. Swainston

9 examined the stool and concluded that the "locking mechanism is not reliable and is subject to

10 operator error or failure of the mechanism to latch shut." ECF No. 25-1 at 2. He also concluded

11 that the stool "is not stable under loading that is not deliberately centered on the platform. If the

12 platform is not properly placed by the driver, it is especially unsafe when used to exit a vehicle."

13 *Id.*

14 **II.     MOTION FOR SUMMARY JDUGMENT**

15       Summary judgment is appropriate if the movant shows "there is no genuine dispute as to

16 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

17 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law."

18 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence

19 is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

20       The party seeking summary judgment bears the initial burden of informing the court of

21 the basis for its motion and identifying those portions of the record that demonstrate the absence

22 of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

23 burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

## A. Vicarious Liability

Aloha argues that when the limitation period against Leivas expired, De Blanc's vicarious liability claim against Aloha was extinguished because Aloha's liability is derivative of Leivas's. De Blanc responds that vicarious liability requires only that the employee is under the employer's control and acts within the scope of his employment.

Aloha relies on a brief reference in *Van Cleave v. Gamboni Construction Company* to "a harsh [common law] rule" that the "release of an employee automatically releases the vicariously liable employer." 706 P.2d 845, 846 (Nev. 1985). In *Van Cleave*, the Supreme Court of Nevada held that under the Uniform Contribution Among Tortfeasors Act, a release signed by the employee did not discharge the employer of vicarious liability. *Id.* at 849. Here, however, the facts present a different question of whether the expiration of the limitation period against the employee discharges the employer of vicarious liability. The parties agree that there is no Nevada case law directly on point. ECF No. 25 at 5; ECF No. 32 at 5. So I must predict how the Supreme Court of Nevada would decide the issue.[1]

---

[1] When a federal court interprets state law, it is bound by the decisions of the state's highest court. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). Where the state's highest court has not decided the issue, a federal court must predict how that court would decide. *Orkin v. Taylor,* 487 F.3d 734, 741 (9th Cir. 2007). I may use

I predict that the Supreme Court of Nevada would hold that the expiration of the of

limitation period against the employee does not discharge the employer of vicarious liability.

First, Nevada decisions on vicarious liability require "proof that (1) the actor at issue was an

employee, and (2) the action complained of occurred within the scope of the actor's

employment." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996); *see also*

*Nat'l Convenience Stores, Inc. v. Fantauzzi*, 584 P.2d 689, 691 (Nev. 1978). Aloha has not

identified, and I have not found, Nevada authority requiring that the employee be held personally

liable to impose vicarious liability on the employer.

Second, the Supreme Court of Nevada often looks to the Restatement (Second) of

Judgments in this context. *See Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d

912, 917 n.3 (Nev. 2014) (collecting cases). Comment (a) to Restatement § 51 recognizes that:

> [B]oth the primary [tortfeasor] and the person vicariously
> responsible for his conduct are ordinarily subject to liability to the
> injured person. In some situations, the vicariously responsible
> person is liable only if the liability of the primary obligor is
> established; this is true, for example, of an insurer's liability for the
> acts of the insured. Ordinarily, however, the person vicariously
> responsible may be held liable even though the liability of the
> primary obligor has not been established. Moreover, in some
> situations the person vicariously responsible may be held liable
> even though an action cannot be maintained against the primary
> obligor. . . . [U]nder prevailing procedural rules the injured person
> ordinarily is not required to join both and may decide to bring suit
> in the first instance against only one of them**.**

Restatement (Second) of Judgments § 51 (1982). California recognizes that a "plaintiff seeking

to hold an employer liable for injuries caused by employees acting within the scope of their

---

"decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co.*, 379 F.3d at 560 (quotation omitted).

employment is not required to name or join the employees as defendants." *Perez v. City of Huntington Park*, 9 Cal. Rptr. 2d 258, 260 (Cal. Ct. App. 1992).

Third, although other states are split, "the jurisprudential trend is tending toward" the rule I predict here. *Verrastro v. Bayhospitalists, LLC*, 208 A.3d 720, 730 (Del. 2019). In fact, two state supreme courts have rejected Aloha's argument since the parties briefed the motion. *See id.*; *Cameron v. Osler*, 930 N.W.2d 661 (S.D. 2019). The Supreme Court of Delaware's decision in *Verrastro* is illustrative. *Verrastro* overruled *Greco v. University Delaware*, 619 A.2d 900 (Del. 1993), which Aloha relies upon, because "it is the negligence of the employee that is imputed to the employer, not the employee's liability." *Verrastro*, 208 A.3d at 729. So "in a negligence action against a principal based on the doctrine of *respondeat superior*, the dismissal of the agent on defenses personal to the agent does not automatically eliminate the principal's vicarious liability." *Id.* at 728-29.

Finally, the Supreme Court of Nevada recognized that the common law rule that "the release of one tortfeasor automatically released all other potential tortfeasors" was "harsh and without any rational basis." *Russ v. Gen. Motors Corp.*, 906 P.2d 718, 720 (Nev. 1995). The common law rule here is equally harsh. It would make De Blanc's timely claim against Aloha retroactively untimely because she did not sue Leivas. So I predict that the Supreme Court of Nevada would hold that the expiration of the statute of limitations against the employee does not discharge the employer of vicarious liability. I thus deny Aloha's motion for summary judgment on the negligence claim and do not consider De Blanc's alternative motion to amend her complaint to add Leivas.

////

////

## B. Negligent Hiring, Training, and Supervision

Aloha argues that De Blanc's negligent, hiring, training, and supervision claim is extinguished because it is duplicative of her vicarious liability claim against Aloha. De Blanc points to Nevada decisions (1) acknowledging negligent hiring and vicarious liability as separate claims and (2) holding that an employer can be liable for negligent hiring whether or not the employee is acting within the scope of employment, arguing that these cases suggest the claims are not duplicative.

The parties agree that there is no Nevada case law on point, so I must predict how the Supreme Court of Nevada would rule. In *Terrell v. Central Washington Asphalt, Inc.*, "I predict[ed] that the Supreme Court of Nevada would hold that a negligent entrustment claim is not redundant of vicarious liability, particularly where . . . punitive damages are sought." 168 F. Supp. 3d 1302, 1313 (D. Nev. 2016). Although De Blanc does not seek punitive damages, I reach the same conclusion here.

The argument that the claims are redundant is based on three considerations: (1) evidence of negligent hiring, training, and supervision is unnecessary because it is just another theory for holding the employer liable for the employee's negligence; (2) "the plaintiff cannot recover any more in damages than he would recover under a theory of respondeat superior"; and (3) evidence of negligent hiring, training, and supervision "would likely be irrelevant and inflammatory." *Alvares v. McMullin*, No. 2:13-CV-02256-GMN, 2015 WL 3558673, at *3 (D. Nev. June 4, 2015).

Although De Blanc can recover the same damages under the two theories, her claims address different conduct and will consequently require presentation of different evidence. De Blanc's vicarious liability theory arises out of Leivas's use of the stool, while her negligent

6

hiring, training, and supervision theory focuses on how Aloha hired and supervised its employees and trained them on how to load and unload passengers and use the stool. ECF No. 32 at 23. A jury could find negligence on one theory and not on the other. And in contrast to a negligent hiring theory, where sordid details regarding an employee's background are often admissible, evidence of Aloha's training practices is not inflammatory. De Blanc's negligent hiring, training, and supervision is not duplicative of its vicarious liability theory.

Aloha alternatively argues that summary judgment is warranted because there is no evidence to support De Blanc's claims. De Blanc responds that there is sufficient evidence to allow the jury to find Aloha negligently trained and supervised Leivas because Aloha's witnesses testified there was no specific training given to employees regarding loading and unloading passengers or use of the step stool. *See* ECF No. 32-1 at 43-44; ECF No. 32-2 at 23-24.

Under Nevada law, an "employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). Based on the deposition testimony that Aloha did not train its employees to load or unload passengers or use the step stool, a reasonable jury could conclude that Aloha failed to use reasonable care in the training of its employees. De Blanc has identified a disputed issue of fact to sustain her negligent hiring, training, and supervision claim for trial.[2]

---

[2] Aloha replies that De Blanc failed to provide "admissible evidence indicating what training Aloha was required to provide." ECF No. 39 at 7. Aloha did not raise this argument in its opening brief and does not explain what admissible evidence is required. But it fails in any event because "[w]here . . . the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of the performance." *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982). It is within the jury's knowledge that use of a step stool to get in and out of a vehicle may result in injury.

7

1    Because the deposition testimony is evidence of a genuine disputed issue of fact for trial,

2 and De Blanc's negligent hiring, training, and supervision claim is not duplicative of her

3 vicarious liability claim, I deny Aloha's motion for summary judgment.

4 **III.     MOTION *IN LIMINE***

5    Aloha argues that Swainston should be excluded from trial because: (1) he is unqualified

6 to offer product engineering opinions, (2) his opinions are not based upon a sound methodology,

7 and (3) his opinions do not assist the jury.  De Blanc responds that: (1) Swainston is qualified

8 because of his expertise in "safety evaluation," (2) inspection of the stool is a reliable method,

9 and (3) Swainston's testimony will assist the jury in determining whether Aloha acted

10 reasonably.

11    Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert . . .

12 may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or

13 other specialized knowledge will help the trier of fact to understand the evidence or to determine

14 a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

15 product of reliable principles and methods; and (d) the expert has reliably applied the principles

16 and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow*

17 *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  I have a "gatekeeping" function to ensure that the

18 jury's consideration of evidence is not contaminated by irrelevant or scientifically unsupported

19 testimony. *See United States v. Alatorre*, 222 F.3d 1098, 1100-03 (9th Cir. 2000).  I enjoy broad

20 discretion over the discharge of this gatekeeping authority, "not only . . . in determining whether

21 an expert's testimony is reliable, but also in deciding how to determine the testimony's

22 reliability." *Elsayed Mukhtar v. Calif. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir.

23

2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014).

Swainston's first conclusion that the "locking mechanism is not reliable and is subject to operator error or failure of the mechanism to latch shut" is not the product of reliable principles and methods. Swainston explains that "these problems were all observed on the working platform that [he] examined," but does not explain how he came to his conclusion that the locking mechanism is not reliable and is subject to operator error or failure. Swainston does not identify any principles or methods to support his conclusions, much less reliable ones. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 153 (1999) (not abuse of discretion to exclude expert on grounds that method of analyzing visual inspection data was unreliable). It seems the jury could observe the stool and reach its own conclusion, rendering expert opinion unnecessary.

Swainston also concludes that the stool "is not stable under loading that is not deliberately centered on the platform. If the platform is not properly placed by the driver, it is especially unsafe when used to exit a vehicle." This conclusion does not assist the jury. The jury can understand that a step stool may be unstable if the user does not step in the center of it. And the jury is capable of determining whether Aloha acted reasonably in this context. *See Daniel, Mann, Johnson & Mendenhall*, 642 P.2d at 1087 ("Where . . . the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of the performance."). Because Swainston's conclusions do not assist the jury and are not the product of reliable principles and methods, I grant Aloha's motion to exclude him.

/ / / /

/ / / /

9

**IV. CONCLUSION**

I ORDER that defendant Aloha Airport Express, LLC's motion for summary judgment **(ECF No. 25) is DENIED.**

I FURTHER ORDER that defendant Aloha Airport Express, LLC's motion to exclude Lane Swainston **(ECF No. 27) is GRANTED.**

DATED this 23rd day of September, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE